```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ILLINOIS
                     EASTERN DIVISION


CHERY G. BELTRAN, LAVERNE BRENT,    )
LUZVIMINDA GUIDAYA, CLAUDIA         )
HERNANDEZ, MAYJYARAH ANN MEADE,     )
ALLEN ORETO and MADELINE PIRAMIDE,  )
                                    )
              Plaintiffs,           )     05 C 2558
                                    )
         v.                         )
                                    )
BRENTWOOD NORTH HEALTHCARE CENTER,  )
LLC and JUDY PITZELE,               )
                                    )
              Defendants.           )
```

## MEMORANDUM OPINION

This case is before the court for ruling on (1) plaintiffs' motion to dismiss defendant Brentwood North Healthcare Center's ("Brentwood") counterclaim for breach of fiduciary duty and (2) defendant Brentwood's motion to dismiss plaintiffs' retaliation claim.[1] For the reasons explained below, both the counterclaim and the retaliation claim are dismissed, but plaintiffs' request for attorneys fees is denied.

## BACKGROUND

Defendant Brentwood is a nursing care facility located in Riverwoods, Illinois. Plaintiffs Chery Beltran, Laverne Brent,

---

[1] Although plaintiffs are also counterdefendants and defendant Brentwood is also a counterplaintiff, for ease of reference we will refer to them simply as "plaintiffs" and "Brentwood."

Luzviminda Guidaya, Claudia Hernandez, Mayjyarah Ann Meade, Allen Oreto and Madelin Piramide are former Brentwood employees who worked the night shift as registered nurses, licensed practical nurses or certified nursing assistants. After Brentwood terminated each of the plaintiffs' employment, plaintiffs commenced this lawsuit against Brentwood and its Administrator, defendant Judy Pitzele, seeking unpaid wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 et seq., and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1 et seq. According to plaintiffs, they were given a thirty-minute, unpaid meal break during each shift, but they were not allowed to use their meal breaks for their own benefit. For example, Pitzele told them that they could not sleep during their meal breaks. Plaintiffs thus contend that they are entitled to be paid for those meal breaks because they were "'on-call' and constantly required to attend to residents during meal breaks." (Sec. Am. Compl. ¶ 18.)

In addition to denying liability under the FLSA, IMWL and IWPCA, Brentwood has asserted a counterclaim alleging that plaintiffs owed fiduciary duties of loyalty to their employer which they breached by sleeping on the job rather than performing their assigned job duties. Brentwood thus seeks to recover all the wages it paid plaintiffs from the first date of breach through the date of termination.

In plaintiffs' view, Brentwood's breach-of-fiduciary-duty counterclaim is frivolous and was filed solely to retaliate against plaintiffs for filing their FLSA claim. As a result, plaintiffs moved to dismiss the counterclaim for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure and amended their complaint to include a claim for retaliation in violation of the FLSA. Brentwood responded to the Second Amended Complaint with a motion to dismiss plaintiffs' retaliation claim pursuant to Rule 12(b)(6).

## ANALYSIS

### A. Rule 12(b)(6) Standard

The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits. 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 354 (3d ed. 2004). When evaluating such a motion, the court must accept as true all factual allegations in the complaint (or counterclaim) and draw all reasonable inferences in the plaintiff's (or counterplaintiff's) favor. Hentosh v. Herman M. Finch Univ. of Health Sciences, 167 F.3d 1170, 1173 (7th Cir. 1999); Jang v. A.M. Miller & Assocs., 122 F.3d 480, 483 (7th Cir. 1997). Dismissal is appropriate only if "'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" Ledford v. Sullivan, 105 F.3d

354, 356 (7th Cir. 1997) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

**B.   Plaintiffs' Motion to Dismiss Brentwood's Counterclaim**

In seeking dismissal of Brentwood's counterclaim, plaintiffs argue that (1) as a matter of law, sleeping on the job does not constitute a breach of the fiduciary duty of loyalty, and (2) Brentwood's breach-of-fiduciary-duty counterclaim also fails for lack of specificity.  Because defendants' first argument is dispositive, there is no need to address the latter.  As explained further below, we conclude that Illinois courts would not recognize a claim that an employee who sleeps during work hours faces liability to his employer for breach of the fiduciary duty of loyalty.

"An agent owes its principal a fiduciary duty to treat the principal with the utmost candor, care, loyalty and good faith." LaSalle Bank Lakeview v. Seguban, 937 F. Supp. 1309, 1324 (N.D. Ill. 1996).  Under Illinois law, employees as well as officers and directors owe a duty of loyalty to their employer. Riad v. 520 S. Michigan Ave. Assoc. Ltd., 78 F. Supp. 2d 748, 763 (N.D. Ill. 1999); E.J. McKernan Co. v. Gregory, 623 N.E.2d 981, 993-994 (Ill. App. Ct. 1993).  The scope of the duty of loyalty may vary depending on whether a corporate officer or an employee is involved.  See, e.g., Aon Risk Serv., Inc. of Ill. v. Shetzer, No. 01 C 7813, 2002 WL 1989466, at *4 (N.D. Ill. Aug. 27, 2002);

Veco Corp. v. Babcock, 611 N.E. 2d 1054, 1059 (Ill. App. Ct. 1993). Because of the duty of loyalty, "a fiduciary cannot act inconsistently with his agency or trust[.]" ABC Trans Nat'l Transp., Inc. v. Aeronautics Forwarders, Inc., 379 N.E.2d 1228, 1237 (Ill. App. Ct. 1978); Cooper v. Chicago Transit Auth., No. 95 C 2616, 1996 WL 520855, at *14 (N.D. Ill. Sept. 10, 1996). Courts applying Illinois law have construed the duty of loyalty to prohibit officers or employees from improperly competing with their employer, soliciting the employer's customers, enticing co-workers away from the employer, diverting business opportunities, engaging in self-dealing and/or otherwise misappropriating the employer's property or funds. E.g., Foodcom Int'l v. Barry, 328 F.3d 300, 304 (7th Cir. 2003) (employees who exploit positions with employer for own benefit to detriment of employer's customer relationships face liability for breach of fiduciary duty); TMF Tool Co., Inc. v. Siebengartner, 899 F.2d 584, 589 (7th Cir. 1990) (officer who commingled funds to pay personal debts breached fiduciary duty); RKI, Inc. v. Grimes, 177 F. Supp 2d 859, 877 (N.D. Ill. 2001) (breach of duty of loyalty to download confidential client information during the course of employment then use that information to compete with the employer); Ladenberger v. Gen. Signal Pump Group/Aurora Pump, No.00 C 4054, 2001 WL 709488, at *5 (N.D. Ill. June 22, 2001) (breach of duty of loyalty for employee to take advantage of property or

knowledge acquired in employer's business to make profit for self at expense of employer); Riad, 78 F. Supp. 2d at 763 (employee who solicits customers or co-workers away from employer may be liable for breaching duty of loyalty); LaSalle Bank, 937 F. Supp. at 1324 (bank employee who embezzled funds from employer breached fiduciary duty); ABC Trans Nat'l Transp., 379 N.E.2d at 1237-1238 (breach of duty of loyalty for employee to continue working for principal after establishing a rival business). But, plaintiffs point out, no court has recognized a breach-of-fiduciary-duty claim grounded on the fact that an agent fell asleep on the job or otherwise failed to perform job requirements satisfactorily.[2] See Dangeles v. Muhlenfeld, 548 N.E.2d 45, 49 (Ill. App. Ct. 1990) (conduct involving mere negligence in job performance rather than disloyalty does not implicate fiduciary duty). The court agrees that sleeping on the job, like other forms of negligent or substandard job performance, is inherently dissimilar from the types of self-dealing scenarios that courts have recognized as forming the basis for viable breach-of-fiduciary-duty claims. For that reason, Brentwood's counterclaim

---

[2] In their reply brief, plaintiffs also contend that Brentwood cannot show how it was damaged by any alleged breach of fiduciary duty. This argument fails for two reasons. For one thing, "forfeiture-of-salary damages are available even where the defendant employer is not otherwise injured by the breach [of fiduciary duty]." McLaughlin v. Chicago Transit Auth., 243 F. Supp. 2d 778, 779 (N.D. Ill. 2003) (internal quotation marks omitted). Additionally, even if the argument had merit (which it does not), plaintiffs did not raise the damages argument until its reply brief, thus waiving the argument. See Estate of Phillips v. City of Milwaukee, 123 F.3d 586, 597 (7th Cir. 1997) (argument raised for first time in reply brief is waived).

that its employees breached their duty of loyalty by sleeping on the job is not actionable under Illinois law. See Mason v. Ashland Exploration, Inc., 965 F.2d 1421, 1424 (7th Cir. 1992) (in the absence of a controlling state court decision, the task of a federal court sitting in diversity is to predict how the Illinois Supreme Court would decide case).

Brentwood's argument to the contrary does not persuade us to rule otherwise. Relying on LaSalle Bank, 937 F. Supp. at 1324, a case in which a bank employee who embezzled $940,000 from her employer was found liable for breaching the fiduciary duties she owed to her employer, Brentwood argues that "[t]here is no meaningful distinction between an employee who steals directly from his employer and an employee who takes money in the form of a paycheck for hours he did not work." (Def.'s Resp. at 5.) This analogy is unpersuasive. An employee who fails to perform his work — whether he spends his work time sleeping on the job, daydreaming or surfing the internet — but still accepts his full paycheck simply is not comparable to an employee who embezzles from her employer. Under many circumstances sleeping on the job, like other types of substandard job performance, will serve as a legitimate ground for discipline, including termination. See Reed v. Amax Coal Co., 971 F.2d 1295, 1299-1300 (7th Cir. 1992) (upholding summary judgment against Title VII plaintiff who was discharged for sleeping on the job); Harris v. TNT Logistics N.

Amer., Inc., No. 04-1100, 2005 WL 3577016, at *8 (C.D. Ill. Dec. 29, 2005) (sleeping on job constitutes good cause for termination). It does not follow, however, that an employee who fails to perform his job satisfactorily also should be subject to liability for breach of fiduciary duty. No Illinois courts have construed the duty of loyalty so broadly, and this court declines to be the first.

Plaintiffs' motion to dismiss Brentwood's counterclaim is granted to the extent they seek dismissal pursuant to Rule 12(b)(6) for failure to state a claim. Plaintiffs' request for the attorney's fees they incurred in responding to the counterclaim, however, is denied.[3] Plaintiffs' motion to dismiss the counterclaim is thus granted in part and denied in part.

**C.  Brentwood's Motion to Dismiss Plaintiffs' Retaliation Claim**

---

[3] Unless applicable legislation specifically provides for fee shifting or a court awards fees as a sanction under the Federal Rules of Civil Procedure, litigants in this country generally pay their own attorney's fees. See Christianberg Garment Co. v. Equal Employment Opportunity Comm'n, 434 U.S. 412, 415 (1978); Fed. R. Civ. R. 11. Here, plaintiffs have not sought fees as a sanction under Rule 11, nor have they cited any relevant statutory fee-shifting provision. Instead, they rely solely on Christianberg, a case in which the Supreme Court addressed the circumstances under which a district court may award attorney's fees to a prevailing party under Title VII's discretionary fee shifting provision. Because Title VII's fee shifting provision clearly does not apply to this case, plaintiffs' reliance on Christianberg, without more, is unpersuasive. Further, although there is a fee shifting provision relevant to plaintiffs' FLSA claim, see 29 U.S.C. § 216(b), it remains to be seen whether plaintiffs will prevail on that claim. At this point, plaintiffs have prevailed only on the breach-of-fiduciary duty counterclaim, and the court is unaware of any fee-shifting statute applicable to that claim. Moreover, even if plaintiffs had sought attorneys' fees as sanctions under Rule 11 for a frivolous, harassing pleading, the court would not be inclined to award such sanctions based on plaintiffs' conclusory assertions that the counterclaim was raised in bad faith. As discussed further below, the fact that Brentwood sought an extension of existing law regarding the duty of loyalty does not render its claim baseless or frivolous.

As mentioned earlier, after Brentwood filed its breach-of-fiduciary-duty counterclaim, plaintiffs amended their complaint to add a claim alleging that Brentwood's counterclaim was frivolous and meritless, filed solely to retaliate against plaintiffs for filing their FLSA claim, thus violating the anti-retaliation provision of the FLSA, 29 U.S.C. § 215(a)(3). Brentwood has moved to dismiss the retaliation count, arguing that filing a compulsory counterclaim cannot support a retaliation claim as a matter of law.[4] We agree, and therefore dismiss plaintiffs' FLSA retaliation claim.

FLSA retaliation claims are governed by the same legal analysis applicable to retaliation claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. Buie v. Quad/Graphics, Inc., 366 F. 3d 496, 503 (7th Cir. 2004). To state a viable retaliation claim, a

---

[4] Brentwood also argues that the claim should be dismissed because plaintiffs have not and cannot state a prima facie case of retaliation, which requires a showing that plaintiffs (1) engaged in statutorily protected activity, (2) performed their jobs according to Brentwood's legitimate expectations, (3) suffered a materially adverse employment action, and (4) were treated less favorably than similarly situated employees who did not engage in statutorily protected activity. This argument is based on the McDonnell Douglas framework as adapted for retaliation claims. See Banks v. CBOCS West, Inc., No. 01 C 795, 2005 WL 1126913, at *9 (N.D. Ill. May 9, 2005) (McDonnell Douglas analysis applies to FMLA retaliation claims). Brentwood's argument is inherently flawed, however, because it is not an appropriate argument for a motion to dismiss. "'The prima facie case under McDonnell Douglas . . . is an evidentiary standard, not a pleading requirement.'" Kolupa v. Roselle Park Dist., — F.3d. —, 2006 WL 306955, at *1 (7th Cir. Feb. 10, 2006) (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510 (2002)). To survive a motion to dismiss, a plaintiff need not allege facts that correspond to each aspect of a prima facie case. Id.

plaintiff must allege that: "(1) she engaged in statutorily protected activity; (2) she suffered an adverse action by her employer or former employer; and (3) a causal link exists between the protected expression and adverse action." Equal Employment Opportunity Comm'n v. K&J Mgmt., Inc., No. 99 C 8116, 2000 WL 34248366, at *3 (N.D. Ill. June 8, 2000). Here, the fact that Brentwood filed a counterclaim does not constitute an adverse action giving rise to a retaliation claim.

As the Seventh Circuit has explained, except in rare cases, conduct occurring within the scope of litigation does not provide grounds for a retaliation claim. Steffes v. Stepan Co., 144 F.3d 1070, 1075 (7th Cir. 1998). This is not one of the rare cases. The purpose of statutory anti-retaliation provisions is to prevent employers from intimidating employees and discouraging them from enforcing their legal rights. Harmar v. United Airlines, Inc., No. 95 C 7665, 1996 WL 199734, at *1 (N.D. Ill. Apr. 23, 1996). We recognize that an employer's lawsuit filed with a retaliatory motive rather than in good faith may constitute an adverse action and provide a basis for a retaliation claim. K&J Mgmt., 2000 WL 34248366 at *3 (collecting cases). But if the mere filing of a counterclaim were sufficient to give rise to a retaliation claim, then every defendant in an FLSA, Title VII or ADA lawsuit who asserts a counterclaim would be subject to a retaliation claim. Because filing a counterclaim

is different from initiating a lawsuit, id., courts in this district repeatedly have ruled that filing a counterclaim, without more, is not an adverse action and thus cannot support a retaliation claim. Neuffer v. York Corrugated, No. 03 C 1658, 2004 WL 1354442, at *1-2 (N.D. Ill. Apr. 30, 2004) (dismissing retaliation claim premised on employer's counterclaim); K&J Mgmt., 2000 WL 34248366 at *4-5 (same); see also Banks, 2005 WL 1126913 at *9 (granting summary judgment because counterclaim was not adverse action); Harmar, 1996 WL 199734 at *1-2 (granting motion to dismiss retaliation claim because filing affirmative defenses did not provide basis for viable retaliation claim). As Judge Kocoras reasoned in K&J Management, unlike initiating litigation against an employee, filing a counterclaim will not chill plaintiffs from exercising and enforcing their statutory rights because by the time the employer files its counterclaim, plaintiffs have already made their charges and initiated a lawsuit. K&J Mgmt., 2000 WL 34248366 at *4. Additionally, asserting a counterclaim generally will not cause a plaintiff to incur the expense of hiring a lawyer to respond to the claim because the plaintiff likely will already have legal representation. Id. Moreover, as Brentwood points out, its counterclaim was compulsory — under Rule 13 of the Federal Rules of Civil Procedure, Brentwood had to file any claims against plaintiffs arising out of the same transaction or waive them.

Because counterclaims are supposed to be brought in response to a complaint, there is nothing suspicious about the timing of Brentwood's counterclaim. Id. at *5.

Relying heavily on Martin v. Gingerbread House, Inc., 977 F.2d 1405, 1407 (10th Cir. 1992), plaintiffs nevertheless urge the court to sustain their retaliation claim on the ground that Brentwood's counterclaim is baseless. In Martin, the Tenth Circuit explained that the filing of a baseless lawsuit by an employer with the intent to retaliate may constitute retaliation in violation of the FLSA. Id.; see Bill Johnson's Rest., Inc. v. Nat'l Labor Relations Bd., 461 U.S. 731, 743-744 (1983) (baseless lawsuit filed with retaliatory motive is enjoinable as unfair labor practice whereas meritorious lawsuit is not, even if it was filed with retaliatory intent). Assuming that principle applies whether the employer initiates a lawsuit or files a counterclaim (an issue we need not decide), Martin does not save plaintiffs' retaliation claim because Brentwood's counterclaim was not baseless. A claim is baseless if, for example, "'clear state law makes the [claim] frivolous[.]'" Martin, 977 F.2d at 1407 (quoting Bill Johnson's Rest., 461 U.S. at 754-755 (Brennan, J., concurring)). As explained above, through its counterclaim Brentwood sought an extension of Illinois law regarding the duty of loyalty. Although we have declined to make such an extension, there was no caselaw clearly rejecting Brentwood's legal theory

at the time the counterclaim was filed. Thus, even though we are dismissing the counterclaim for failure to state a claim, we disagree that the counterclaim was baseless.[5] See id. at 1408 (although court ruled that employer's third party complaint for indemnification was preempted by federal law, complaint was not baseless because no circuit court had ruled on preemption issue when claim was filed).

Accordingly, the court concludes that the mere filing of Brentwood's counterclaim is not an adverse action that can provide a basis for an FLSA retaliation claim. See K&J Mgmt., 2000 WL 34248366 at *4. In reaching this conclusion, we do not "foreclose the possibility that a counterclaim may in the 'rare case' serve as the basis for a retaliation claim.'" Id. (quoting Steffes, 144 F.3d at 1075).

## CONCLUSION

For the reasons explained above, plaintiffs' motion to dismiss defendant Brentwood's counterclaim is granted to the extent they seek dismissal pursuant to Rule 12(b)(6) for failure to state a claim but denied with respect to their request for

---

[5] Plaintiffs also rely on Harper v. Realmark Corp., 4:04-CV 179392, 2004 WL 1795392, at *5 (S.D. Ind. July 29, 2004), a case in which the district court allowed a retaliation claim based on the employer's counterclaim to survive a motion to dismiss, declining to follow K&J Management in part because the plaintiff had alleged that the counterclaims caused her to incur additional attorneys fees. There is no such allegation in this case, however. Notwithstanding the Harper decision, this court finds K&J Management applicable here. In any event, following the reasoning of Bill Johnson's Restaurants and Martin, Brentwood's counterclaim does not give rise to a retaliation claim because it was not baseless.

attorney's fees.  Defendant Brentwood's motion to dismiss plaintiffs' retaliation claim is granted.

DATED: April 4, 2006

ENTER: _____
John F. Grady, United States District Judge